tainment in any way short of actual value, in this case the parties them-selves have furnished by their agreement the rule by which that value can be determined. Under his original agreement with Tegner, the surviving partner was to pay, in case of the retirement or death of the senior partner (Vivanti), to him or to such person as he might by will or deed appoint, a sum equal to one-third of the annual profits of the business, each year for 10 years, in payment for his interest in the good will of the firm of Vivanti Bros. When William Greenbaum was ad-mitted to the firm, he bound himself to pay for the senior partner's interest in good will the same sum in like annual payments to Vivanti, or in case of his death to his wife, and on her decease to a third person. After the death of Vivanti, when Greenbaum was sole surviving part-ner, he made a written agreement with Vivanti's widow, whereby he bound himself to pay for the rights of Vivanti in the good will of the business, instead of the one-third originally provided, 12½ per cent. of the net profits for the first year, beginning July 1, 1906, and 15 per cent. for every year thereafter until the period of 10 years had expired, or until the death of the widow. It appears that the latter's expectancy of life is more than the period limited.

The appraiser arrived at the value of the good will by averaging the profits of the business for the four years preceding decedent's death, taking 15 per cent. of that amount, and multiplying it by 10, giving a total of $59,088.21. The learned surrogate fixed the value at the amount of Vivanti's share of the profits of the business for the year immediately preceding his death. For this computation there seems to be no authority. The amount fixed by agreement of the parties must determine the value. But an error has been made in the compu-tation for the percentage for the first year should be only 12½ per cent. instead of 15 per cent., and what is to be determined is the value of the good will as of the time of decedent's death; that is, it would not in any event be $59,088.21, but the present value of such a sum payable in 10 annual installments.

The order appealed from must therefore be reversed, without costs, and the matter remitted to the Surrogate's Court for further action in accordance with this determination. All concur.

---

In re FARMERS' LOAN & TRUST CO.

Appeal of McMILLAN et al.

(Supreme Court, Appellate Division, First Department. May 6, 1910.)

1. WILLS (§ 470*)—CONSTRUCTION—CODICIL.

A codicil is a single instrument, and all of its provisions must be con-strued together.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 988; Dec. Dig. § 470.*]

2. WILLS (§ 16*)—RESTRICTION ON DEVISES TO CHARITIES—CODICIL—EFFECT.

A will bequeathed a specified sum in trust to apply the income to tes-tatrix's niece and on her death without issue the fund, together with the residue of the estate, as provided for by the residuary clause, to go to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

charitable institutions. Within two months of her death testatrix executed a codicil, by the first clause of which she revoked the residuary clause, and by a subsequent clause she revived the residuary clause so far as it disposed of the remainder of the trust. *Held*, that the residuary clause stood unrevoked so far as it disposed of the remainder of the trust, and the charitable institutions took under the will, so that the gift to them was not void as having been made within two months before the death of testatrix in violation of Laws 1848, c. 319, § 6, as amended by Laws 1903, c. 623.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 37; Dec. Dig. § 16.*]

3. WILLS (§ 481*)—CONSTRUCTION—REPUBLICATION.

For the purpose of construction, a will republished by a codicil is deemed to have been brought down to the date of the codicil.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1006; Dec. Dig. § 481.*]

Appeal from Surrogate's Court, New York County.

Judicial settlement of the account of the Farmers' Loan & Trust Company, as trustees under the will of Ellen McLachlan, deceased, for the benefit of Alice Eleanor Moffat. From a decree of the Surrogate Court settling the accounts, Mary Isabella McMillan and others, as administrators of Alice Eleanor Moffat, deceased, appeal. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

Rodolphe Claughton, for appellants.

Alexander B. Halliday, for respondents Howard Mission and Home for Little Wanderers.

Stanley W. Dexter, for respondent Childrens' Aid Society.

MILLER, J. By the second clause of her will, Ellen McLachlan bequeathed $100,000 to her executors in trust to receive the rents, issues, and profits thereof and apply the same to the use and benefit of her niece, Alice Eleanor Moffat, giving the said niece a testamentary power of appointment of the remainder, and bequeathing it, in the event of the latter's failure to exercise such power, to her child or children equally, and providing that, in case of the death of said niece intestate, without leaving issue her surviving, it should fall into and become a part of the residuary estate of the testatrix. By the twentieth or residuary clause of her will, the testatrix devised and bequeathed all the rest and remainder of her estate in equal shares to the Childrens' Aid Society and to the Howard Mission and Home for Little Wanderers, the respondents. Within two months of her death, she executed a codicil, by the first clause of which she in terms revoked the twentieth or residuary clause of her will. She then made certain other changes, and provided by the ninth clause of the codicil as follows:

"All the rest, residue and remainder of my estate real and personal (if any) herein meaning to include any and every amount of any, and all bequests, bequests in trust and beneficial provisions hereinbefore contained (excepting only the provision in trust for my niece in the clause of my said will entitled second) which bequests or provisions may lapse or fail, so that were it not for this clause of my will and codicil I should die intestate as to the

same or any part of the same I do give and bequeath the same to my niece Alice Eleanor Moffat, absolutely.

"As to the said provision in trust in favor of my said niece in said second clause of my will contained I do provide that in case she shall not survive me or having survived me shall die leaving no issue her surviving and having made no appointment as therein allowed and provided, that the trust fund shall pass under and be distributed as provided by said twentieth clause (now revoked) of my said will which in such event and to the extent of said trust fund only; and I do revive and re-institute as a portion of my last will and testament."

The said niece, Alice Eleanor Moffat, died intestate without issue. The decree appealed from adjudges that the respondents are entitled to the remainder of the $100,000 trust pursuant to the residuary clause of the will.

The sole question presented upon this appeal is whether the respondents take under the ninth clause of the codicil or under the residuary clause of the will; it being conceded by them that, if they take under the codicil and not under the will, the bequest to them is void for having been made within two months before the death of the testatrix. Section 6, c. 319, Laws 1848, as amended by chapter 623, Laws 1903.

Standing alone, the first clause of the codicil absolutely revoked the twentieth or residuary clause of the will; and, if the first and ninth clauses are to be read as separate and distinct provisions, the appellants are entitled to prevail on this appeal. But the codicil is a single instrument, and all of its provisions are to be construed together. The question is: How did it affect the will? In one clause, the testatrix said that she revoked the twentieth or residuary clause of her will. By another, she said that she revived and reinstated so much of the residuary clause as disposed of the remainder of the $100,000 trust. The effect of the two together, therefore, was to revoke the twentieth or residuary clause, except in so far as it related to the disposition of the remainder of the $100,000 trust. The twentieth clause of the will, therefore, stands unrevoked in that respect, and the respondents take under the will, not under the codicil. We are the more ready to adopt that construction from the fact that it does not violate the spirit of the statute in question. In place of getting anything under the codicil, the effect of that instrument was to cut down the bequest to the respondents.

No doubt, as the appellant contends, for the purpose of construction, a will republished by a codicil is deemed to have been brought down to the date of the codicil, but that does not affect the question before us.

The decree should be affirmed, with separate bills of costs to the respondents, who appeared separately and filed briefs, payable out of the estate. All concur.